

**FILED**
NOV 22 2021
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>Raul RAMIREZ,<br><br>Defendant. | Case No.: **21MJ8788-RBM**<br><br>**FINDINGS OF FACT AND ORDER OF DETENTION** |

In accordance with Title 18 U.S.C. § 3142(f) of the Bail Reform Act of 1984 (18 U.S.C. § 3141, et seq.), a detention hearing was held on September 22, 2021, to determine whether defendant Raul RAMIREZ, should be held in custody pending trial on the grounds that he is a flight risk. Assistant U.S. Attorney Rosario Gonzalez appeared on behalf of the United States. Attorney James Johnson of Federal Defenders, Inc. appeared on behalf of the Defendant.

Based on the evidence proffered by the United States and the Defendant, the information provided by the Pretrial Services Officer, and the criminal complaint issued against the Defendant on September 17, 2021, by this Court, the Court concludes that the following facts establish by a preponderance of the evidence that no condition or combination of conditions required will reasonably assure the appearance of the Defendant.

I

# FINDINGS OF FACT

A. <u>Nature and Circumstances of the Offense Charged (18 U.S.C. §3142(g)(1))</u>:

The Defendant is charged in Criminal Complaint No. 21MJ8788-RBM with transportation of illegal aliens, in violation of Title 8 U.S.C., Section 1324(a)(1)(A)(ii). Therefore, probable cause exits to believe the Defendant committed the charged offense.

B. <u>Weight of the Evidence Against the Defendant (18 U.S.C. § 3142(g)(2))</u>:

1. On September 16, 2021 at approximately 1:30 p.m., Remote Video Surveillance System (RVSS) operator, Border Patrol Agent H. Torres, observed several suspected illegal aliens rafting north across the All-American Canal (AAC), approximately 12 miles east of Calexico, California. BPA Torres notified agents in the field of this via Service radio.

2. This area of the border region consists of agricultural land. The United States/Mexico border is separated by a fence that measures approximately 15 feet tall. The border is also marked with monuments which are visible just south of the border fence. Highway 98 is approximately one mile north of the International Boundary and runs parallel to it. This area is consistently used by smugglers to smuggle illegal aliens and controlled substances into the United States.

3. Access across the canal is limited to Border Patrol Agents and Imperial Irrigation District (IID) employees, who cross the canal through bridges that are gated and maintained locked. Swimming in the canal is restricted by law. Illegal aliens that enter the U.S. through this area must swim or raft across the canal. It is extremely uncommon to find United States Citizens or legal aliens swimming or rafting across the All-American Canal. Border Patrol Agents working this area of the border reasonably suspect that subjects swimming or rafting across the canal are illegal aliens having made illegal entry into the United States through Mexico.

4. BPA Torres observed the suspected illegal aliens reach the north bank of the All-American Canal. Agent Torres observed one individual paddle the raft back to the south side of the canal and return to Mexico with the raft. At that time, Agent Torres observed a

dark blue colored pickup truck traveling westbound on the canal bank toward the suspected illegal aliens. Agent Torres observed the pickup truck stop directly north of the suspected illegal aliens and then observed multiple suspected illegal aliens exit the canal and board the pickup truck. Agent Torres observed the pickup truck continue westbound and then turn northbound on a field road. As the pickup truck traveled northbound, several Border Patrol Agents, operating marked Service vehicles, arrived to the north of the pickup truck along Highway 98. Agent Torres observed the pickup truck turn westbound on another field road located approximately one-half mile south of Highway 98. A few minutes later, Agent Torres observed the pickup make a U-turn and travel back eastbound on the same field road. Agent Torres observed the pickup truck reach a lateral road and then drive southbound to the All-American Canal. This information was relayed over the Service radio.

5. Supervisory Border Patrol Agent (SBPA) A. Mills responded to the area in his marked Service vehicle and traveled westbound toward the pickup truck. As Agent Mills arrived, he observed the pickup truck stopped along a road that cuts through the thick brush located north of the All-American Canal. At that that time, Agent Mills observed several individuals exit the pickup truck and run into the thick brush. The pickup truck then continued eastbound. Agent Mills was following behind the pickup with Border Patrol Agent J. Quintero behind Agent Mills. When the pickup truck reached one field road east of Bonesteel Road, it turned northbound, and Agent Mills activated his emergency lights and siren to signal for the pickup to stop. Border Patrol Agents J. Bourque and R. Alfaro were near the scene on Highway 98 it as the pickup traveled eastbound.

6. At that time, the driver of the pickup truck, later identified as Raul RAMIREZ, stopped on the field road and exited the pickup truck with his left hand up, and his right hand holding up a cell phone. Agent Mills approached RAMIREZ, identified himself as a Border Patrol Agent, placed RAMIREZ in the prone position and handcuffed him. Agent Mills questioned RAMIREZ as to his citizenship and RAMIREZ stated that he was a United States Citizen and was born in Los Angeles, California. Agent Mills placed RAMIREZ in the back of his Service vehicle. Then Agent Mills returned to the thick brush where earlier

3

he had observed several individuals exit the pickup truck. Agents Bourque and Alfaro followed Agent Mills to the location. Agent Quintero stayed with the pickup truck, which was identified as a dark blue colored 2006 four door Ford F-150 bearing California Plates.

7. A few minutes after arriving at the thick brush, Agent Bourque located seven of the suspected illegal aliens. Agent Bourque identified himself as a Border Patrol Agent and questioned the subjects as to their citizenship. All seven stated that they were citizens of Mexico without documentation to be in the United States legally. Agent Bourque placed all seven illegal aliens under arrest. Approximately five minutes later, Border Patrol Agent M. Villa discovered two more of suspected illegal aliens approximately 75 yards north of where the pickup truck had stopped after following their footprints through the thick brush. Agent Villa identified himself as a Border Patrol Agent and questioned them as to their citizenship. Both individuals stated that they were citizens of Mexico without documentation to be in the United States legally. Agent Villa placed both illegal aliens under arrest. The nine passengers of the vehicle were subsequently placed under arrest. RAMIREZ was also placed under arrest for 8 USC 1324 Alien Smuggling.

8. On September 16, 2021, at the Calexico Station, Agents Alfaro and Torres conducted a videotaped sworn statement with the driver of the Ford, Raul RAMIREZ, regarding his involvement in smuggling nine illegal aliens. RAMIREZ stated that his true and correct name is Raul RAMIREZ. RAMIREZ stated that he was born in Los Angeles, California. RAMIREZ stated that he is a citizen of the United States. RAMIREZ stated he currently lives in Mexicali, Baja California, Mexico. RAMIREZ stated that an unknown subject approached him and asked him to do a favor and transport illegal aliens. RAMIREZ stated that on today's date, he made entry into the United States driving a Ford pick-up. RAMIREZ stated he entered the United States with the intention of transporting illegal aliens. RAMIREZ stated he drove to Walmart and waited there until receiving a phone call. RAMIREZ stated he received a call and was given instructions to drive to the area where the illegal aliens were waiting. RAMIREZ stated he was told to drive on Highway 98 and continue past State Route 7. RAMIREZ stated he was told to drive past a ranch house near

some haystacks and then drive towards the canal where the illegal aliens would be waiting. RAMIREZ stated he observed the illegal aliens near the canal, and he told them to get into his vehicle. RAMIREZ stated he also observed Border Patrol vehicles in the area and tried to avoid them by driving in a different direction. RAMIREZ stated he was not given instructions on where to take the illegal aliens.

9. RAMIREZ stated he has one prior arrest for drug smuggling in 2018. RAMIREZ stated he was incarcerated for 37 months and given three years of probation for that arrest. RAMIREZ stated he was told he would be paid more than $1,000.00 for transporting the illegal aliens. All Material witnesses stated they were going to pay between $8,000 and $9,000 to be smuggled into the United States.

C. History and Characteristics of the Defendant (18 U.S.C. § 3142(g)(3)):

1. Though the Court acknowledges this is the least important factor, the weight of the evidence is strong against Defendant including the fact that Defendant was the driver or the vehicle and Defendant made admissions.

2. Defendant is a resident of Mexico and has strong ties to Mexico.

3. Defendant is unemployed.

4. Defendant has a history of illicit drug use.

5. Defendant is currently on Supervised Release for a conviction in the Southern District of California for importation of methamphetamine and cocaine and is pending violation proceedings.

D. Nature and Seriousness of Danger Posed by Release (18 U.S.C. § 3142(g)(4)):

The government proffered no evidence to suggest that release of the Defendant would pose a danger to any person or the community. However, Defendant has a prior criminal history. Defendant was convicted in the Southern District of California for importation of methamphetamine and cocaine and was sentenced to 37 months custody with a three (3) year term of Supervised Release. Defendant is currently on Supervised Release for that conviction and is pending violation proceedings.

## II

## REASONS FOR DETENTION

A.  There is probable cause to believe that the Defendant committed the offense charged in Criminal Complaint No. 21MJ8788, to wit: Transportation of Illegal Aliens in violation of Title 8 U.S.C., Section 1324(a)(1)(A)(ii).

B.  Defendant faces a substantial period of time in custody if convicted of the offense charged in the Complaint. He, therefore, has a strong motive to flee.

## III

## ORDER

IT IS HEREBY ORDERED that the Defendant be detained pending trial in this matter.

IT IS FURTHER ORDERED that the Defendant be committed to the custody of the Attorney General, or his designated representative, for confinement in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

//
//
//
//
//
//
//
//
//
//
//
//

While in custody, upon order of a court of the United States or upon the request of an attorney for the United States, the person in charge of the correctional facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding or any other appearance stipulated to by defense and government counsel.

THIS ORDER IS ENTERED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED: 11/22/2021

HON. RUTH BERMUDEZ MONTENEGRO
U.S. MAGISTRATE JUDGE

Prepared by:

RANDY S. GROSSMAN
ACTING UNITED STATES ATTORNEY

Rosario Gonzalez
Assistant U.S. Attorney

cc:   James Johnson
      Counsel for Defendant